IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DIRK LAPAGLIA, | : | CIVIL ACTION NO. |
| BOP Reg. # 63104-019, | : | 1:12-CV-3530-ODE-JSA |
|     Movant, | : | |
| | : | CRIMINAL ACTION NO. |
| v. | : | 1:11-CR-416-ODE-JSA-1 |
| | : | |
| UNITED STATES OF AMERICA, | : | MOTION TO VACATE |
|     Respondent. | : | 28 U.S.C. § 2255 |

## MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION

Now before the Court are Movant's motion to vacate, 28 U.S.C. § 2255, challenging the sentence enhancement he received in this Court in January 2012 (Doc. 25), the government's response (Doc. 28), and Movant's reply (Doc. 30).

### I. Guilty Plea and Sentencing

On October 6, 2011, Movant pled guilty to twenty-one counts of possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). (Doc. 13-1 at 1; *see* Docs. 7, 9). Included in Movant's Guilty Plea and Plea Agreement was an appeal waiver, which provided:

> To the maximum extent permitted by federal law, the Defendant voluntarily and expressly waives the right to appeal his conviction and sentence and *the right to collaterally attack his conviction and sentence in any postconviction proceeding (including, but not limited to, motions*

> *filed pursuant to 28 U.S.C. § 2255)* on any ground, except that the Defendant may file a direct appeal of an upward departure or variance from the applicable sentencing guideline range as determined by the Court at sentencing. The Defendant understands that this Plea Agreement does not limit the Government's right to appeal, but if the Government does appeal, the Defendant may file a cross-appeal.

(Doc. 13-1 ¶ 12 (emphasis added)).  Movant signed the Plea Agreement and then separately signed the following Certification of Defendant and Counsel:

> I have read the Information against me and have discussed it with my attorney.  I understand the charges and the elements of each charge that the Government would have to prove to convict me at a trial.  I have read the foregoing Plea Agreement and have carefully reviewed every part of it with my attorney.  I understand the terms and conditions contained in the Plea Agreement, and I voluntarily agree to them.  *I also have discussed with my attorney the rights I may have to appeal or challenge my conviction and sentence, and I understand that the appeal waiver contained in the Plea Agreement will prevent me, with the narrow exceptions stated, from appealing my conviction and sentence or challenging my conviction and sentence in any post-conviction proceeding.*  No one has threatened or forced me to plead guilty, and no promises or inducements have been made to me other than those discussed in the Plea Agreement.  The discussions between my attorney and the Government toward reaching a negotiated plea in this case took place with my permission.  *I am fully satisfied with the representation provided to me by my attorney in this case.*

(*Id.* at 8 (emphasis added)).

At the plea hearing, the Court explained to Movant that his plea agreement contained an appeal waiver, which provided that, except for the two limited

2

circumstances noted therein, he was "giving up [his] right to appeal [his] sentence." (Doc. 28 at 22). Movant stated that he understood. (*Id.*). Movant then acknowledged that the government had made no promise, except those contained in the plea agreement, to induce him to plead guilty; that he was satisfied with his retained counsel's services; that no one had threatened him or coerced his guilty plea; and that his plea was tendered "freely and voluntarily." (*Id.* at 22, 30; *see id.* at 17 (noting that Movant's counsel was retained by him rather than appointed by the Court)).

The prosecutor made the following proffer of the evidence that the government would present at Movant's trial. In April 2011, local law enforcement agents identified Movant as the source of a hand-delivered package that had been addressed to a young girl in Movant's neighborhood and left on the driveway of her home, which package "was filled with women's lingerie and a very explicit letter describing sex acts between a number of the girls and boys in the neighborhood." (*Id.* at 23-24). After obtaining a search warrant for Movant's home, law enforcement authorities discovered on his personal computer the images of

> two dozen victim minors whose pictures had been taken at softball games or at swim meets or community events and had been altered either to have the bathing suit disappear or . . . the victim's face [or] upper body morphed into sexually explicit pictures. Also found on the computer were a series of images of [Movant] engaging in autoerotic behavior but

3

> not in his house. These were photographs that the agents were ultimately able to determine were taken in the bedrooms of several of the girl victims. No evidence of the girls being present, but [Movant] was in the girl victims['] bedrooms with their underpants and himself and was filming that.

(*Id.* at 25). The prosecutor described other, related aspects of Movant's behavior, and then stated that "the reason there are 21 counts is that there are at least 21 victims, each count refers to a different girl from the neighborhood or adjacent . . . neighborhoods." (*Id.* at 27). Movant acknowledged that the prosecutor's recitation of the facts was correct. (*Id.*). The prosecutor stated further that "as to each of the 21 counts, [the government] would need to show that [Movant] knowingly possessed a pornographic sexually explicit image of victim one through 21. And that for each of those 21 victims he used [the photo-altering] software, the item that had moved through interstate commerce, as part of his possession of those images." (*Id.* at 29). Movant acknowledged that he understood the charges against him and that he was pleading guilty to each charge freely and voluntarily. (*Id.*).

Movant's Presentence Investigation Report contained a recommendation for a guideline sentencing range of 41-51 months of imprisonment. (*Id.* at 6). On January 12, 2012, in light of the unusual circumstances of Movant's case—in which he took advantage of his and his daughters' friendships with families in their neighborhood to

4

obtain photographs of the minor female victims—the Court sentenced Movant to serve seventy-two months in federal prison, twenty-one months beyond the recommended guideline sentencing range. (*See* Doc. 28 at 33-78). Movant's judgment of conviction was entered on January 23, 2012. (Doc. 22). Movant did not file a direct appeal. (*See generally* Docket Sheet).

## II.     Pleadings of the Parties

In his § 2255 motion to vacate his sentence, Movant raises four claims of ineffective assistance of counsel with respect to his sentence, which he claims "exceeded the sentencing guidelines, which called for a sentence [of] 41 to 51 months, due to prejudicial argument and mischaracterization of evidence presented by the Prosecution." (Doc. 25 at 8). Movant claims that counsel failed to object to (1) the government's assertion that there were 22 minor child victims, when in fact there were only nine, and to the government's presentation of witness statements, including testimony at the sentencing hearing, from women who were not underage and whose altered photographs on Movant's computer were therefore not illegal, which objections, if successful, would have reduced the actual number of illegal photographs on Movant's computer from "over 500," as presented to the Court, to "less than 100"; (2) the prosecutor's presentation at the sentencing hearing of an "inaccurate and

5

prejudicial timeline" indicating that Movant waited until after his arrest to seek treatment for his sexual addition, when in fact he sought treatment "more than three weeks before [he] became aware of any involvement by local law enforcement"; (3) the prosecutor's characterization of the "average age range" of the victims as "middle school age," when in fact all of the victims "were at least 16 years of age - high school age"; and (4) "the presentation of an erotic story, obtained from the internet, as part of [the government's] characterization of a 'pattern of behavior' in order to obtain a higher sentence." (*Id.* at 7-8).

The government responds that all of Movant's claims of ineffective assistance of counsel at sentencing are barred by his valid appeal waiver. (Doc. 28 at 6-9). The government notes that Movant "does not expressly claim that his waiver or guilty plea were in any way unknowing or involuntary." (*Id.* at 8). The government also contends that even if Movant had not waived all four of his § 2255 claims, they would fail on the merits. (*Id.* at 9 n.3). The government notes that Movant acknowledged in his Plea Agreement that the prosecution could prove at trial, "by admissible evidence and beyond a reasonable doubt," that he "possessed sexually explicit images of at least 21 different minor females" (*see* Doc. 13-1 ¶ 7), and Movant affirmed that acknowledgement during his plea hearing (*see* Doc. 28 at 27, 30). (Doc. 28 at 9 n.3).

6

In Movant's reply, dated April 22, 2013 and docketed April 29, 2013, he reiterates his contention that his counsel failed "to object to the presentation of witness statements of NON-MINORS . . . [and] to the prosecutor's other inflammatory remarks" during sentencing, which "allowed the prosecution to present a different case to the Court than the case to which [he] thought he had pleaded guilty." (Doc. 30 at 2). Movant contends that this failure allowed the Court, in turn, to sentence him outside the recommended guideline range. (*Id.*).

Movant also raises two new claims in his reply. First, noting that "a claim of ineffective assistance of counsel in connection with the negotiation of a plea agreement cannot be barred by the terms of the agreement itself, as the prosecution has urged," Movant contends that counsel provided ineffective assistance with respect to the plea negotiations by failing "to negotiate an agreement that accurately represented the correct number of minor victims and the correct number of computer images." Finally, Movant claims that counsel disregarded his "specific instructions . . . to file a notice of appeal immediately following the upward departure in sentencing." (*Id.*).

**III.  Discussion**

    **A.  Movant's Valid and Enforceable Appeal Waiver Bars His Claims of Ineffective Assistance of Counsel at Sentencing**

7

The Supreme Court set forth the standard for evaluating a claim of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a court determines "whether, in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. Second, a court determines whether counsel's challenged acts or omissions prejudiced the defendant, i.e., whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The *Strickland* test also applies in the context of a guilty plea, where, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also United States v. Broce*, 488 U.S. 563, 569 (1989) (stating that "when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary").

"It is well-settled that sentence-appeal waivers are valid if made knowingly and voluntarily." *Williams v. United States*, 396 F.3d 1340, 1341 (11th Cir. 2005). "[F]or

a sentence-appeal waiver to be enforceable, the government must show that either (1) the district court specifically questioned the defendant concerning the sentence appeal waiver during the [plea] colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver." *Id.* (Internal quotations omitted).  "[A] valid sentence-appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing." *Id.* at 1342; *see United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002) (following "wealth of authority" in holding "that an ineffective assistance of counsel argument survives a waiver of appeal only when the claimed assistance directly affected the validity of that waiver or the plea itself").

In his § 2255 motion, Movant does not challenge the validity of his plea agreement or appeal waiver by alleging that he entered into either the agreement or the waiver unknowingly or involuntarily or that his counsel provided ineffective assistance with respect to either. Moreover, as set forth below, the new claims of ineffective assistance of counsel that Movant raises in his reply, to the extent that they are properly before the Court on their merits, likewise do not establish that Movant's plea

9

agreement was either unknowing or involuntary. Therefore, in light of Movant's valid and enforceable appeal waiver, his claims of ineffective assistance of counsel at sentencing are barred from merits review. *See Williams*, 396 F.3d at 1342.

### B. The Claims That Movant Raises in His Reply Are Either Time-Barred or Without Merit or Both

A § 2255 motion must be filed within one year of the latest of the following dates:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). Absent one of the circumstances set forth in subparagraphs two through four above, none of which are relevant here, the limitations period begins to run when a § 2255 movant's judgment of conviction becomes final. Movant's judgment of conviction was entered on the docket on January 23, 2012. (See Doc. 22).

10

Because Movant did not file a direct appeal, his judgment of conviction became final on February 6, 2012. *See* Fed. R. App. P. 4(b)(1)(A) (setting 14-day appeal period), (b)(6); *Murphy v. United States*, 634 F.3d 1303, 1305-06, 1307 (11th Cir. 2011) ("[W]hen a defendant does not appeal his conviction or sentence, the judgment of conviction becomes final when the time for seeking that review expires.").

Accordingly, unless equitable tolling applies here, Movant must have raised all of his § 2255 claims by February 6, 2013. "Equitable tolling is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999). The movant carries the "burden of establishing entitlement to this extraordinary remedy." *Drew v. Dep't of Corr.*, 297 F.3d 1278, 1286 (11th Cir. 2002). Movant has offered no evidence or argument that he is entitled to equitable tolling.

Movant dated his reply on April 22, 2013, more than two months after the expiration of the one-year limitations period. As explained below, neither of the two new claims that he raises therein—alleging ineffective assistance of counsel in negotiating his plea agreement and in failing to file a notice of appeal—relates back to the timely claims in his § 2255 motion, all of which involve counsel's allegedly

11

ineffective assistance at, and with respect to, Movant's sentencing. Moreover, even if Movant's claim regarding counsel's negotiation of the plea agreement relates back to his timely claims, it fails on the merits.

For statute of limitations purposes, an untimely, later-filed claim may be deemed timely only if it "relates back" to a timely claim under Federal Rule of Civil Procedure 15(c).

> "[F]or an untimely § 2255 claim to 'relate back' under Rule 15(c), the untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial and sentencing proceedings. Instead, in order to relate back, the untimely claim must have arisen from the 'same set of facts' as the timely filed claim, not from separate conduct or a separate occurrence in 'both time and type.'"

*Pruitt v. United States*, 274 F.3d 1315, 1319 (11th Cir. 2001) (quoting *Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000)). Neither of Movant's two untimely, later-filed claims in his reply arises from the same set of facts as the timely claims in his § 2255 motion, as they involve events distinct both in time and type from the events at Movant's sentencing hearing, namely, events that occurred either before or after his sentencing. Therefore, the Court may not address these time-barred claims on the merits.

It might be argued, nevertheless, that Movant's ineffective-assistance claim

12

regarding the plea negotiations, at least, relates back to his first § 2255 ineffective-assistance claim regarding his sentencing, because both claims contest the number of victims and illegal photographs involved in Movant's case. Such an argument would be unavailing to Movant, however, because he cannot show that he was prejudiced by counsel's allegedly deficient performance. In other words, he cannot show that his plea was unknowing or involuntary due to counsel's efforts during plea negotiations.

Nor can Movant show that counsel was deficient or that Movant suffered any prejudice from counsel failing to negotiate a plea agreement that stipulated to fewer victims or images. Movant himself acknowledged, both in his plea agreement and at his plea hearing, after a lengthy description of the evidence supporting the charges against him, that his crimes involved at least 21 minor victims, and he also acknowledged in his plea agreement that his crimes involved at least 600 photographs of child pornography. (*See* Doc. 13-1 ¶ 7; Doc. 28 at 22-30).

Therefore, Movant's ineffective-assistance claims in this regard—waived or not, timely or not—fail on the merits. *See Strickland*, 466 U.S. at 694; *United States v. Wilson*, 245 Fed. Appx. 10, 11-12 (11th Cir. 2007) (stating that "even if [appellant's] counsel was in some way deficient in advising [him] of the possible sentencing implications [of] his guilty plea, [appellant] cannot establish prejudice" because

13

"[d]uring the plea colloquy, the district court itself explained to [him] – in detail – the consequences of the plea agreement, range of punishment, and sentencing contingencies before accepting [his] guilty plea[,]" so that "any failure on the part of [his] counsel to clearly explain the possible punishment was cured by the district court" (footnote omitted)). Movant's plea colloquy establishes that he knew precisely what he was doing when he acknowledged the extent of his crimes and pled guilty to those crimes. It is too late now for him to change his mind on these matters.

## IV. Certificate of Appealability

A federal prisoner must obtain a certificate of appealability (COA) before appealing the denial of a motion to vacate. 28 U.S.C. § 2255(d); 28 U.S.C. § 2253(c)(1)(B). A COA may issue only when the movant makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the [motion to vacate] should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations omitted). A movant need not "show he will ultimately succeed on appeal" because "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate."

14

*Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir.) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 337, 342 (2003)).

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, . . . a certificate of appealability should issue only when the prisoner shows both that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Jimenez v. Quarterman*, 555 U.S. 113, 118 n.3 (2009) (internal quotations omitted) (citing *Slack*, 529 U.S. at 484). Although *Slack* involved an appeal from the denial of a 28 U.S.C. § 2254 petition, the same standard applies here. *See Jones v. United States*, 224 F.3d 1251, 1254 (11th Cir. 2000) (applying *Slack* standard in § 2255 case).

Because Movant has not raised a claim of arguable merit regarding the validity of his plea agreement or of his appeal waiver, whose enforcement bars his claims of ineffective assistance of counsel at sentencing, a COA is not warranted here.

## V. Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that the Court **DENY** Movant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence [Doc. 25], **DISMISS** this action, and **DENY** Movant a certificate of appealability.

15

The Clerk is **DIRECTED** to terminate the referral to the Magistrate Judge.

**SO RECOMMENDED** this 10th day of May, 2013.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE